# United States District Court
### EASTERN DISTRICT OF TEXAS
#### SHERMAN DIVISION

| | | |
|---|---|---|
| RIVER CAPITAL ADVISORS OF | § | |
| NORTH CAROLINA, INC. | § | |
| | § | |
| | § | |
| V. | § | CASE NO. 4:10-cv-471 |
| | § | (Judge Mazzant) |
| FCS ADVISORS, INC. and BREVET | § | |
| CAPITAL SPECIAL OPPORTUNITIES | § | |
| MASTER FUND, L.P. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants' Motion for Summary Judgment (Dkt. #54) and Plaintiff's Motion for Partial Summary Judgment (Dkt. #57). Having considered the relevant pleadings, the Court finds that both motions should be denied.

### BACKGROUND

Plaintiff River Capital Advisors of North Carolina, Inc. brings this action against two New York banks, Defendants FCS Advisors, Inc. ("FCS") and Brevet Capital Special Opportunities Master Fund, L.P. ("Brevet"), asserting that Defendants worked in concert to cause Aruba Energy, L.L.C. ("Aruba") to default on its obligation to pay Plaintiff a Success Fee of $3,275,000 (the "Success Fee"). Plaintiff, acting as Aruba's agent, asserts that it was instrumental in securing $115,000,000 in financing for Aruba, which was provided by Defendants in a series of transactions that closed in December 2007. Aruba sought these funds to drill oil and gas wells.

On or about April 9, 2007, Plaintiff entered into an engagement agreement with HAGL Energy, LLC ("HAGL"). Pursuant to the fee agreement, Plaintiff agreed to advise and assist HAGL, on an exclusive basis, with regard to the consideration and execution of various financial and

-1-

strategic alternatives available to it with regard to financing for the drilling of up to one hundred natural gas and oil wells. As provided in the fee agreement, upon successful completion of a legally binding financing agreement, Plaintiff would be entitled to a Success Fee from HAGL. The Success Fee was 3.5 percent of the aggregate dollar amount of any transaction.

Plaintiff provided advisory and other services under the fee agreement and initiated negotiations with FCS and others to obtain funding and enter into a legally binding financing agreement with HAGL. Due in large part to the efforts of Plaintiff, Bank of America, N.A. ("Bank") and Aruba entered into a Bridge Loan in the amount of $10,000,000 on September 21, 2007. As a result, Aruba paid Plaintiff a $350,000 fee. Brevet became the successor in interest and assignee of all of Aruba's rights under the Bridge Loan. Pursuant to the terms of the Bridge Loan, FCS acted as Brevet's administrative and collateral agent.

Plaintiff asserts that its fee arrangement with Aruba did not expire with the execution of the Bridge Loan, and the fee arrangement remained in full force and effect as Brevet began negotiating with Aruba for a $115,000,000 loan that was facilitated by Plaintiff. On or about December 20, 2007, on the eve of the closing of the $115,000,000 loan to Aruba, Plaintiff, HAGL, and Aruba entered into an Amendment of Letter Agreement dated April 9, 2007 (the "Amendment"). Pursuant to the Amendment, Aruba expressly assumed all obligations of HAGL under the fee agreement. The Amendment specifically provided that the Success Fee "shall be deemed earned by [River Capital] upon successful closing of that one certain Term Loan Agreement by and between [Aruba], as Borrower, and FCS Advisors, Inc., as Administrative Agent for the Lender or Lenders identified therein, of even date herewith (the 'Loan Agreement') and that one certain Participation Agreement by and between [Aruba] and AEWI1, Inc. of even date herewith." The total financial package by

Plaintiff on Aruba's behalf was to be at least $115,000,000.

Upon successful closing of the loan, the Success Fee would be due Plaintiff in the principal amount of $4,025,000. Plaintiff asserts that it became increasingly clear that Brevet would not finance the deal unless Plaintiff agreed to defer the Success Fee. Pursuant to the Amendment, Aruba paid Plaintiff $750,000 on the date of the closing, which represented the non-deferred portion of the Success Fee as set forth in the Amendment. Plaintiff agreed to defer the remaining $3,275,000 of the Success Fee. The deferred portion of the Success Fee was to be paid in full upon the earlier of occurrence of one of the following three events: (1) the closing of the liquidation event as defined in the Loan Agreement; (2) the achievement by [Aruba] of a loan to asset ratio of greater than 2.0:1.0; or (3) the anniversary date of the closing and funding of the initial tranche under the Loan.

Over the course of the weeks and months following the December 2007 closing, Plaintiff and Aruba remained in close contact with one another, and Aruba regularly provided financial information to Plaintiff in order to verify whether the loan to asset ratio had been satisfied. Based upon documents that Aruba provided to Plaintiff in July 2008, Aruba achieved the 2-1 asset to loan ratio required by Defendants and contained in the Amendment.

On or about July 23, 2008, Plaintiff sent a letter to Aruba requesting the payment of the deferred fee. The request stated that the achievement requirements had been met and that the Success Fee and accrued interest became due in full. However, no payments were made toward the deferred portion of the Success Fee. The anniversary date of the closing, December 24, 2008, came and went, yet with no explanation whatsoever Aruba failed and refused to pay the balance of the Success Fee.

Plaintiff initiated a lawsuit in the 199th Judicial District Court of Collin County, Texas,

against Aruba. After litigating for some time, Aruba capitulated and agreed to the entry of a final judgment (the "Agreed Judgment"). Pursuant to the Agreed Judgment, Aruba was ordered to pay Plaintiff the amount of $3,275,000, plus interest in the amount of 18 percent per annum compounded from December 24, 2007. Aruba was also ordered to pay attorneys' fees. Following the entry of the Agreed Judgment, Plaintiff served discovery upon Aruba on or about November 20, 2009. Plaintiff also issued a Writ of Garnishment on Aruba's bank account, to which a Judgment of Garnishment was entered in the amount of $20,248.59.

Plaintiff then filed this suit against Defendants in the 219th District Court of Collin County, Texas, asserting that Defendants were responsible for Aruba's failure to pay the Success Fee.

Plaintiff asserts that Defendants' refusal to allow any portion of the loan funds to be used to pay the deferred Success Fee not only caused Aruba to default in its obligation to Plaintiff, but subjects Defendants to liability for claims of fraudulent inducement, negligent misrepresentation, de facto partnership/alter ego, tortious interference with existing contract, and attorneys' fees.

On September 14, 2010, Brevet removed this case from state court (Dkt. #1). On September 16, 2010, the Court issued its Order ordering Plaintiff to file an amended complaint in conformance with the pleading requirements of the Federal Rules of Civil Procedure by October 18, 2010 (Dkt. #5). Plaintiff did not file an amended complaint. On November 2, 2010, Defendants filed a Motion to Dismiss Plaintiff's Complaint (Dkt. #11). On February 7, 2012, the undersigned issued a report and recommendation that the motion should be granted in part, recommending dismissal of Plaintiff's claims for fraudulent inducement, de facto partnership or alter ego and claim for attorneys' fees (Dkt.#23). On March 3, 2012, the recommendation was adopted by United States District Judge Michael Schneider (Dkt. #26). The parties then consented to proceed before the undersigned (Dkt.

#49, #50).

On May 18, 2012, Defendants filed a motion for summary judgment (Dkt. #54). On June 4, 2012, Plaintiff filed a response (Dkt. #65). On June 15, 2012, Defendants filed a reply (Dkt. #72). On June 22, 2012, Plaintiff filed a sur-reply (Dkt. #76).

On May 18, 2012, Plaintiff filed a motion for partial summary judgment (Dkt. #57). On June 5, 2012, Defendants filed a response (Dkt. #68). On June 15, 2012, Plaintiff filed a reply (Dkt. #75). On June 25, 2012, Defendants filed a sur-reply (Dkt. #77).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of

the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257.

### DISCUSSION AND ANALYSIS

After deciding the motion to dismiss, Plaintiff's remaining claims in this case are for negligent misrepresentation and tortious interference with contract.

Defendants asserts the following as grounds to support their motion for summary judgment: (1) Whether Plaintiff has standing to assert claims for negligent misrepresentation and tortious interference despite not being a party to the contract on which those claims are based; (2) Whether Defendants are entitled to summary judgment on Plaintiff's claim for negligent misrepresentation based upon whether the alleged statements that future borrowing requests for its fee would be approved are but mere promises of future conduct, and not statements of existing fact, whether Plaintiff, comprised of experienced individuals represented by counsel, reasonably relied on the alleged statements, and/or whether Plaintiff's action in entering into a contract to defer its fee, where no contract for the fee previously existed, constitutes detrimental reliance; and (3) Whether Defendants are entitled to summary judgment on Plaintiff's claim for tortious interference, based upon whether there exists an identifiable contract subject to interference where Plaintiff is not a party to the contract on which this claim is based, whether Defendants intentionally interfered with

Plaintiff's contract where it took no steps to prevent the other party from fulfilling the contract via other means, or whether Defendants were exercising their own contractual rights as a senior secured lender in declining to fund the subject borrowing requests while defaults and/or events of default existed under the loan.

Plaintiff seeks summary judgment on Defendants' affirmative defenses of failure to state a claim, privilege and justification, statute of limitations, waiver, estoppel, laches, failure to mitigate, contributory negligence, and third party's inability to perform. Plaintiff asserts that there is no evidence of one or more of the elements of each such affirmative defense.

To recover under Texas law for negligent misrepresentation, Plaintiff must prove that (1) the defendant made a representation in the course of his business, or in a transaction in which he had a pecuniary interest, (2) the defendant supplied false information for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 318 (5th Cir. 2002)(citations omitted). "To recover for tortious interference with contract, a plaintiff must prove: '(1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss occurred.'" *Amigo Broadcasting, LP v. Spanish Broadcasting System, Inc.*, 521 F.3d 472, 489 (5th Cir. 2008) (quoting *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)).

After reviewing the respective motions and all relevant pleadings, the Court finds that there are material fact issues that should be resolved at trial. This case is set for a bench trial on August

27, 2012.

It is therefore ORDERED that Defendants' Motion for Summary Judgment (Dkt. #54) and Plaintiff's Motion for Partial Summary Judgment (Dkt. #57) are hereby DENIED.

**SIGNED this 2nd day of August, 2012.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE